## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MARIA PASCUAL, individually and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **Case No. 1:19-cv-00234-LY** |
| **ABILITY RECOVERY SERVICES, LLC, PENDRICK CAPITAL PARTNERS, LLC, and JOHN DOES 1-25,** | § § § § § | |
| **Defendants.** | § § | |

### MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Maria Pascual ("Plaintiff"), by and through her counsel hereby submits this unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). Defendants, Ability Recovery Services, LLC and Pendrick Capital Partners, LLC, do not oppose this Motion.

## I.    INTRODUCTION

This consumer class action arises from Plaintiff's allegations that Defendants Ability Recovery Services, LLC ("Ability") and Pendrick Capital Partners, LLC ("Pendrick") (Ability and Pendrick are collectively referred to herein as "Defendants") sent Plaintiff and other similarly situated consumers initial collection letters in an attempt to collect upon an alleged debt which were in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692

1

*et seq.* Plaintiff submits this Motion for preliminary approval of the proposed class action settlement (the "Settlement") of this lawsuit (the "Action"). While Defendants deny Plaintiff's allegations that the subject letters violate the FDCPA, Defendants have entered into a settlement and therefore Defendants do not oppose this Motion.[1]  The terms of the Settlement are set forth in the Class Action Settlement Agreement (hereinafter the "Agreement") attached hereto as __Exhibit 1__.

The proposed Settlement provides that Defendants will pay $38,500.00 into a Settlement Fund (the "Settlement Fund") to settle all claims in this Action, in return for the Released Claims in favor of Defendants and the Released Parties. All of the estimated 7,417 individual Settlement Class Members who timely submit a claim form will receive a pro-rata payment from the Settlement Fund.

If any funds remain in the Settlement Fund from uncashed or undeliverable checks 120 days after all timely claims have been paid, the first $2,000.00 of the residual funds shall be used to offset the Defendants' costs of the third-party settlement administrator, First Class, Inc. Thereafter, any remaining residual funds will be disbursed to a mutually agreeable *cy pres* recipient or one that is chosen by the Court.

The proposed Settlement further provides that Defendants will pay FDCPA statutory damages and an incentive award of $2,500.00 to Plaintiff for her service

---

[1] Pursuant to ¶¶ 11 and 23-26 of the Agreement, if the Settlement is not finally approved by the Court for any reason whatsoever, or if more than 3% (or 223) of the Settlement Class Members Opt-Out then Defendants reserve the right to declare the Agreement null and void and shall be without prejudice to the rights of the Parties hereto and shall not be used in any subsequent proceedings in this or any other Lawsuit, or in any manner whatsoever.

as the class representative and that Plaintiff's counsel shall petition the Court for approval of an award of fees, costs, and expenses in an amount not to exceed $35,645.00, which Defendants will not and do not oppose.

Defendants will additionally pay all claims administration costs incurred by the third-party claims administrator First Class, Inc. (hereinafter the "Claims Administrator") in connection with the Settlement.  As part of the Settlement, Plaintiff and the Settlement Class Members will release and discharge Defendants and the Released Parties from all claims arising out of or relating to Defendants' transmission of the collection letters at issue here.

Plaintiff and Plaintiff's Counsel have determined that the proposed Settlement provides significant benefits to the Settlement Class Members and is in their best interests. In reaching this opinion, Plaintiff's Counsel considered the contested legal issues, Defendants' financial conditions, and the risks, uncertainty, complexity, delay, and litigation costs associated with continued litigation, including the burden and expense of class certification and trial. Plaintiff's Counsel carefully analyzed the Settlement in light of the Parties' respective positions and determined that the immediate, certain, and substantial payments offered by Defendants to settle this case was fair, reasonable, and adequate relief to the Class.  *See* Declaration of O. Randolph Bragg Decl., ¶¶ 16 and Declaration of Brent A. Devere Decl., ¶ 10, filed herewith  Plaintiff also believes the Settlement is fair and reasonable, considering the highly contested issues, as well as the risks, uncertainty, and costs of further litigation of this action, the financial

3

status of Defendants, and the burden and expense of class certification and trial. *See* Declaration of Maria Pascual Decl., ¶ 12 and 13, filed herewith.  Similarly, in an effort to avoid further costs, and as evidenced by the Agreement, Defendants have determined that it is also desirable to settle the Action.

Accordingly, Plaintiff moves the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rules of Civil Procedure Rule 23(b)(1) and 23(b)(3) for settlement purposes only, and to schedule a fairness hearing. This Motion is unopposed by Defendants.  A proposed Preliminary Approval Order is filed concurrently herewith and attached as **Exhibit 4** to the Agreement.

For the reasons set forth below, the proposed Class Settlement satisfies all of the criteria for preliminary approval.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Pendrick and Ability violated the FDCPA by sending written correspondence to Plaintiff and the Settlement Class Members on debts barred by Texas' 4-year statute of limitations period that did not disclose to Plaintiff and the Settlement Class Members that the debts were time-barred or that any payment could restart the statute of limitations in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10) and 1692f.  Defendants have denied and continue to deny that they violated the FDCPA and deny all allegations of wrongdoing or liability alleged against them in this Action.

In order to reach the Settlement, the Parties participated in an arms-length settlement conference on November 8, 2019. Following the settlement conference and as a result of additional telephone conferences and written exchanges, the Parties reached this Settlement, the terms of which are memorialized herein, and subject to Court approval. The Parties also conducted substantial formal discovery, including written discovery requests, concerning the class size and Defendants' financial status.  Bragg Decl., ¶¶ 15.

## III.    THE PROPOSED CLASS SETTLEMENT

### A.    Settlement Class Members

The proposed "Class" or "Settlement Class Members" means the persons in the following definition:

> All consumers in the State of Texas (i) to whom Ability Recovery Services, LLC from March 12, 2018 to April 2, 2019 mailed a collection notice on behalf of Pendrick Capital Partners, LLC that is identical to or is substantially the same form as the Letter attached as **Exhibit 1** to the Agreement and which was not returned as undeliverable, (ii) in an attempt to collect a debt that was incurred more than 4 years prior to the date of the collection notice and where (iii) the collection notice did not contain any disclosure that the alleged debt was time barred and that any payment could restart the statute of limitations.

There are approximately 7,417 individuals in the Settlement Class. This was determined by propounding discovery to Defendants, who responded by identifying all 7,417 individuals who received the written correspondence identical or substantially similar to the form received letter received by Plaintiff. *See* Declaration of Patricia Cobb, filed herewith.

**B.    Notice to the Settlement Class Members**

The Settlement provides that, no later than 30 days after entry of the Preliminary Approval Order, the Claims Administrator shall provide the following:

### 1.    Direct Notice

The Claims Administrator shall cause notice to be mailed to the Settlement Class in the form and substance set forth in **Exhibit 2** of the Agreement. Prior to mailing the Notice, the Claims Administrator shall obtain from Ability the current addresses for such class members and process the addresses through the National Change of Address database. In the event that a Notice is returned as undeliverable and a forwarding address is provided, the Notice shall be sent to the forwarding address as soon as practicable. A Claim Form in the substance set forth in **Exhibit 3** of the Agreement shall accompany the Notice.

Additionally, Defendants shall be responsible for timely compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. CAFA notices will be issued to the Attorney General of the United States and the Attorney General for the State of Texas. Defendants shall provide proof of such compliance by filing a confirming declaration with the Court within 10 court days of completion.

6

C.    <u>**Settlement Terms and Benefits to the Settlement Class**</u>

The proposed Settlement contemplates the following terms and benefits to be provided to the Settlement Class:

1.    <u>**Class Payment**</u>

Defendants will pay $38,500.00 into a Settlement Fund to settle all claims in this Action, in return for release of the Released Claims in favor of Defendants and the Released Parties. All of the estimated 7,417 individual Settlement Class Members who timely submit a Claim Form will receive a pro rata payment from the Settlement Fund.

If any funds remain in the Settlement Fund from uncashed or undeliverable checks 120 days after all timely claims have been paid, the first $2,000.00 of the residual funds shall be used to offset the Defendants' costs of the third-party claims administrator. Thereafter, any remaining residual funds will be disbursed to a mutually agreeable *cy pres* recipient or one that is chosen by the Court.

The $38,500.00 Settlement Fund represents 55% of the maximum class-wide statutory damages allowed by the FDCPA which are capped by statute at 1% of Defendants' joint net worth under the FDCPA. *See* 15 U.S.C. § 1692k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). Pendrick continues to deny that its net worth is applicable and

Pendrick is contributing solely for purposes of settlement.

### 2.    Class Representative's Application for An Incentive Award

Plaintiff's Counsel will move the Court for FDCPA statutory damages and an incentive award to Plaintiff in the amount of $2,500.00, for her service as Class Representative.

### 3.    Discontinue Use of The Letter

Ability as part of this Settlement agree to discontinue use of the letter at issue attached as **Exhibit 1** to the Agreement when attempting to collect time-barred debts from persons in Texas and agree that any letter sent to a Texas consumer attempting to collect a time-barred debt shall include an appropriate disclosure as required by law. Pendrick, as a debt buyer, does not communicate directly with consumers or send letters to consumers.

### 4.    Class Counsel's Application for Attorneys' Fees and Costs

Plaintiff's Counsel shall petition the Court for approval of an award of fees, costs, and expenses in an amount not to exceed $35,645.00, which Defendants will not and do not oppose.

### 5.    Class Claims Administration

Defendants shall pay the third-party claims administrator First Class, Inc. for all costs required to provide notice as well as any other costs of administration.

### 6.    Exclusions

Any member of the Settlement Class may seek to be excluded from the Settlement Class by opting-out within the time period set by the Court which the

Parties recommend be 60 days after entry of the Preliminary Approval Order. A request for exclusion must be in writing and include the name of the case. The request must also include the name, address, phone number, and signature of the person seeking exclusion. The request must be mailed to the third-party administrator at the address provided in the Notice and the envelope must be postmarked no later than such date set by the Court for opting-out.

A request for exclusion that does not include all the foregoing information, or that is sent to an address other than one designated in the Notice, or that is not received within the time specified shall be invalid and the person serving such request shall remain a Settlement Class Member and shall be bound as a Settlement Class Member to the Agreement, if approved.

The Claims Administrator shall forward copies of all requests for exclusion to Counsel for Plaintiff and Counsel for Defendants no later than 7 days after receipt.

Any Settlement Class Member who opts-out of the Settlement Class and the Agreement shall not be bound by any prior court order or the terms of the Agreement.

Defendants reserve the right to declare this Agreement null and void if more than 3% of the Settlement Class Members (or 223 Settlement Class Members) opt-out of the Agreement.

7.    **Entry of Appearance**

Pursuant to Fed. R. Civ. P. 23(c)(2)(B)(iv), any Settlement Class Member

may enter an appearance in this Lawsuit through his or her attorney by filing said appearance with the Clerk of the Court and serving copies of said appearance on Plaintiff's Counsel and Defendants' Counsel at the addresses set forth in Paragraph 22 of the Agreement within sixty (60) days after entry by the Court of the Preliminary Approval Order. All appearances must be in writing and filed with the Clerk of the Court. A Settlement Class Member is not required to enter an appearance to participate in the settlement.

## 8.    Objections

Any Settlement Class Member may object to the Agreement by filing said objection with the Clerk of the Court and serving copies of the objection on Plaintiff's Counsel and Defendants' Counsel at the addresses set forth in Paragraph 22 of the Agreement within the time period for objections set by the Court. The Parties agree to recommend the objection deadline be 60 days from the date of entry of the Preliminary Approval Order. All objections must be in writing, filed with the Clerk of the Court and signed by the Settlement Class member or his or her attorney and include: (1) the objector's name, address, and telephone number; (2) the name and number of the case; and (3) the factual basis and legal grounds for the objection to the Settlement. The written objection must indicate whether the Settlement Class member and/or his or her lawyer intends to appear at the Final Approval Hearing. Any lawyer who intends to appear at the Final Approval Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the last day of the exclusion/objection deadline set by the Court

and shall include the full caption and case number of each previous class action case in which that lawyer has represented an objector.

### 9.    Claim Forms

A Claim Form shall be mailed along with the Notice to each of the Settlement Class Members within 30 days after entry of the Preliminary Approval Order in the form and substance set forth in **Exhibit 3** to the Agreement.  The Claim Form must be completed and physically signed by Settlement Class Members who wish to submit a claim for a settlement payment. Claim Forms must be postmarked on or before the Claims Deadline. The Parties agree to recommend the claim deadline be 60 days from the date of entry of the Preliminary Approval Order.  Upon proper completion and timely submission of a Claim Form, the Settlement Class Members shall be entitled to receive a settlement check as set forth above.

### IV.    STANDARD FOR CLASS CERTIFICATION

Congress expressly recognized the propriety and utility of class litigation for enforcement of consumers' rights under the FDCPA. As such, through enactment of 15 U.S.C. §§ 1692k(a)(2)(B) and (b)(2), Congress provided an express statutory mechanism for computation of class awards. *See* 15 U.S.C §§ 1692k(a)(2)(B) and (b)(2).

A party seeking class certification must satisfy the four threshold requirements identified in Fed. R. Civ. P. 23(a). The movant must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(1)-(4). The proposed class must also be of a type described in one or more of the three subdivisions of Rule 23(b). *Id.*

When evaluating a motion for class certification, "the court does not have the authority to conduct a preliminary inquiry into the merits of the case, and hence the substantive allegations contained in the complaint are accepted as true." *In re Lease Oil Antitrust Litigation (No. II)*, 186 F.R.D. 403, 419 (S.D. Tex. 1999) (citing *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-78 (1974)). And, in evaluating a motion for class certification, courts should resolve doubts in favor of approving certification. *See id.*; *see also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985).

## V.    <u>THE REQUIREMENTS OF FED. R. CIV. P. 23(a) ARE MET</u>

### A.    <u>Numerosity</u>

Fed. R. Civ. P. 23(a)(1) requires that certification be supported by a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). When a debt collection form letter is involved, it is likely that it would have been distributed with sufficient frequency so as to meet the Fed. R. Civ. P. 23(a)(1) requirement. *See Borcherding-Ditloff v. Transworld Sys. Inc.*, 185 F.R.D. 558 (W.D. Wis. 1999). Moreover, the impracticality of joinder depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific

minimum number of class members. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Zeidman v. J, Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). The Fifth Circuit has suggested that a class consisting of more than forty members should raise a presumption that joinder is impracticable. *Id.* (citing 1 Newberg on Class Actions § 3.05 at 3-25 (3d ed. 1992)).

Because the collection notice at the heart of this litigation is a form letter with standardized language and letters with substantially identical language to the letter received by Plaintiff were received by 7,417 other consumers in the State of Texas, the class is so numerous that joinder of all members is impracticable. *See e.g. Castro v. Collecto, Inc.*, 256 F.R.D. 534, 540-41 (W.D. Tex. 2009) (certifying FDCPA class when "[p]laintiff ha[d] established at least more than 500 individuals received the same letter"); *Henderson v. Eaton*, No. 01-0138, 2002 WL 10464, at *1 (E.D. La. Jan. 2, 2002) (finding numerosity element satisfied with estimated class of at least 200 members); *Mullen*, 186 F.3d at 624 (finding 100 – 150 members satisfied the numerosity requirement). As such, the numerosity requirement under Rule 23(a)(1) has been satisfied.

**B.    Commonality**

Rule 23(a)(2) requires that the class members' claims be linked through common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This provision "'does not require complete identity of legal claims among the class members,' [but] there must be 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *In re Lease Oil*, 186 F.R.D. at 420 (quoting

13

*Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

A common nucleus of operative fact is generally enough to satisfy the commonality requirement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Where there is "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). Further, "[a]s long as class members are allegedly affected by a defendant's general policy, and the general policy is the crux or focus of the litigation, the commonality prerequisite is satisfied." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 442-43 (W.D. Tex. 1999).

Commonality can be satisfied by virtue of all class members receiving the same form debt collection letter. *See, e.g., Castro*, 256 F.R.D. at 541; *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005); *Swanson v. Mid Am., Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) (commonality shown where all class members received the same collection letter); *Durham v. Continental Cent. Credit*, 2010 WL 2776088 (S.D. Cal. July 14, 2010).

Here, common questions of both law and fact are raised concerning the propriety of Defendants' form collection letter. Every prospective class member was sent a substantially identical letter. The Complaint addresses the following

legal issues, and each applies equally to each and every member of the Settlement Class, namely:

1.    Whether the initial collection notice mailed by Defendant violates the FDCPA, as alleged in Plaintiff's Complaint (Complaint, ¶¶ 32 and 35); and

2.    The proper measure and appropriate formula to be applied in determining class statutory damages under the FDCPA.

Therefore, the commonality requirement of Rule 23(a)(2) is satisfied.

## C.    **Typicality**

Rule 23(a)(3) requires that Plaintiff show the "claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Lease Oil*, 186 F.R.D. at 420. The test for typicality is not demanding and "[i]t focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (internal quotations omitted).

A named plaintiff's claim is typical if "it arises from the same practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims." *Newman v. CheckRite California, Inc.*, 1996 WL 1118092, at *5 (E.D. Cal. Aug. 2, 1996). Typicality is so closely related to commonality that "a finding of one will generally satisfy the other." *Id.* (citing

Newberg, Class Actions, § 3.13). A form letter can establish typicality in FDCPA class action cases. *See Castro*, 256 F.R.D. at 542; *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008) ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied."); *Gonzales v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007).

Here, each and every member of the proposed Settlement Class is alleged to have received a letter in the form of the letter received by Plaintiff. Each member of the Settlement Class has the very same claims against the Defendants and each of those claims would be susceptible to the same defenses. Plaintiff respectfully submits that, since the claims of all Settlement Class Members, including the Plaintiff, arise from the same event, practice or course of conduct, namely, the receipt of a standardized form letter, typicality is satisfied.

**D.    Fair and Adequate Class Representation**

"To meet Rule 23 requirements [for adequate representation], the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). Class representatives "must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Id.* (citing *Berger v. Compaq Computer*

16

*Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)); *see also Steward v. Janek*, 315 F.R.D. 472, 490 (W.D. Tex. 2016). As the U.S. Supreme Court has held, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Further, class counsel must be both competent and zealous in representing the class' interests. *See, e.g., Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Plaintiff has sufficiently demonstrated her desire and ability to vigorously prosecute this action. Since the case's inception, Plaintiff has maintained regular contact with her attorneys and has remained available and accessible to them. Plaintiff recognizes that, as the named plaintiff, she must represent all consumers in the class. Her interests are aligned with those of the other Class Members and there has been no indication or suggestion that her interests may conflict with the interests of unnamed Class Members. *See* Pascual Decl. For the foregoing reasons, the Court must conclude that Plaintiff has and will continue to provide fair and adequate class representation in satisfaction of the fourth prong of Fed. R. Civ. P. 23(a).

Appointment of class counsel is one of the obligations of the trial court. The Court may consider any "matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). However, Fed. R. Civ. P. 23(g)(1)(A) sets forth 4 factors which must be considered by the Court in order to satisfy its obligations. Those factors are: (i) the work

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). In evaluating the adequacy of representation, the court may also examine the attorney's professional qualifications, skills, experience and resources. *See North American Acceptance Corp. v. Arnall, Golden & Gregory*, 593 F.2d 642 (5th Cir. 1979). The Court is entitled to look to counsel's demonstrated performance in this Action in rendering its determination.

This Court should find that the counsel chosen by Plaintiff meet the standards imposed by Rule 23. O. Randolph Bragg, Esq. and Brent A. Devere, Esq. collectively have extensive experience in consumer class actions and other complex litigation.  *See* Bragg Decl., ¶ 14 and Devere Decl., ¶ 9. Plaintiff's Counsel has engaged exclusively in the area of consumer rights litigation, and have extensive experience in fair debt collections, and class actions. *Id.* Plaintiff's Counsel has litigated numerous cases and have a history of aggressive, successful prosecution of consumer rights litigation and consumer class actions. From the outset, Plaintiff's Counsel has vigorously pursued this Action on behalf of Plaintiff and the proposed class members and have demonstrated their ability to do so before this Court, and, have worked diligently with Defendants' Counsel in reaching a meaningful settlement in the best interest of all the parties. Finally, Defendants do not oppose the appointment of O. Randolph Bragg, Esq. and Brent A. Devere, Esq.

to represent the proposed Settlement Class. As such, Plaintiff's Counsel should be appointed as Class Counsel.

## VI.    THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(1) ARE MET

In addition to meeting the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), the proposed class must also meet one of the three provisions of Rule 23(b). It is the Parties' position that the class may be certified under Fed. R. Civ. P. 23(b)(1) or Fed. R. Civ. P. 23(b)(3).

According to Fed. R. Civ. P. 23(b)(1), a class action may be maintained if: "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Certification under Fed. R. Civ. P. 23(b)(1)(A) becomes applicable where a party is obliged by law to treat all members of the class alike. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

In this case, if it was adjudicated that Ability, on behalf of Pendrick, sent to all putative class members, a form collection notice whose language and content violate the FDCPA as a matter of law, Ability would then be obligated to cease from sending identical notices to other consumers and to change the language of

said form notices so as to comply with the FDCPA. A class may also be appropriate under Fed. R. Civ. P. 23(b)(1)(B) because judgments in individual lawsuits could adversely affect the rights of other members of the class. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) ("Some members . . . might attempt to maintain costly individual actions in the hope . . . that their claims are more meritorious than the claims of other class members. A mandatory class action under Rule 23(b)(1)(B) is thus necessary ... to prevent claimants with such motivations from unfairly diminishing the eventual recovery of class members."); *see also In re Joint Eastern and Southern District Asbestos Litigatio*n, 982 F.2d 721, 736-37 (2d Cir. 1992), *modified*, 993 F.2d 7 (2d Cir. 1993) (limited fund class appropriate when "recoveries of early successful claimants…would…preclude later claimants . ." from recovering).

In this case, because there are at least 7,417 class members who can file their own complaint against the Defendants, the funds available for recovery may be insufficient to cover the claims of each individual. Therefore, a class certified under Fed. R. Civ. P. 23(b)(1)(B) may be appropriate. *Ortiz v. Fireboard Corp.*, 527 US 815, 834 (1999). In order to certify under Fed. R. Civ. P. 23(b)(1)(B), the Court must find that the totals of the aggregated liquidated claims and the fund available for satisfying them demonstrate the inadequacy of the fund to pay all the claims. *Id.* at 838. Here, there are at least 7,417 different class members. If each were to receive $1,000.00 (the maximum statutory award set forth by the FDCPA) that alone would amount to $7,417,000.00, which is not inclusive of attorney's fees

and costs that a prevailing party would also be entitled to under the FDCPA. Defendants' joint net worth is wholly insufficient and inadequate to satisfy the claims of all 7,417 class members, which Plaintiff's Counsel ascertained by serving written discovery to Defendants regarding Defendants' net worth during the Class Period.[2]  Pendrick continues to deny that its net worth is applicable in this action and is contributing solely for purposes of settlement.

Fed. R. Civ. P. 23(b)(1)(B) is appropriate where the Defendants with inadequate assets may be forced through separate litigation to pay claimants with lower priority to the prejudice of those with higher priority claims. *Ortiz*, 527 U.S. at 839. Given that Defendants do not have the sufficient assets to fully compensate each putative class member, individuals who file suit early on would be awarded damages and attorney's fees in amounts that would, as a practical matter, be to the detriment of claimants who file their lawsuits at a later time. Where the class is comprised of individuals who might state a claim on a single set of facts, thereby invoking a common theory of recovery, and are to be satisfied from a limited fund as the source of payment, certification under Fed. R. Civ. P. 23(b)(1)(B) is appropriate. *Id.*

As stated above, each of the putative class members can claim that Ability, on behalf of Pendrick, violated the FDCPA based on the language and form of the standardized collection notice that they received and accordingly, each class

---

[2]Defendants' joint net worth constitutes confidential information under the operative Protective Order.  Plaintiff can make Defendants' balance sheets available to the Court for *in camera* review, if necessary.

member stands to be compensated from their limited assets. Therefore, each member would be entitled to a pro-rata amount. *See* 1 J. Pomeroy, Equity Jurisprudence § 407, pp. 764-765 (4th ed. 1918) ("[I]f the fund is not sufficient to discharge all claims upon it in full . . . equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment"). Further, Pendrick aggressively asserted the defense that it was not vicariously liable for the alleged wrongful conduct of Ability, acting as a debt collector for Pendrick accounts.

Based on the foregoing reasons, the Court will find that the requirements of Fed. R. Civ. P. 23(b)(1)(B) have been met.

## VII.   <u>THE REQUIREMENTS OF FED. CIV. P. 23(b)(3) ARE MET</u>

For certification under Fed. R. Civ. P. 23(b)(3), a two-pronged test must be met. First, "questions of law or fact common to class members [must be found to predominate over questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Additionally, the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In reaching its conclusions, the Rule requires a Court to consider the interests of individual members of the class in controlling their own individual litigation, the nature and extent of any existing parallel litigation, the desirability of concentrating the litigation in one forum and the manageability of the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). The Court will find that the Rule 23(b)(3) criteria have been

met.

## A.    <u>Common Questions Predominate</u>

The predominance criterion is satisfied where a "common nucleus of operative fact" exists among all members of the class for which a remedy is provided at law. *Newman*, 1996 WL 1118092 at *8 (internal quotation omitted). In consumer actions brought under the FDCPA, a common nucleus of operative fact is typically found where, as here, defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents. *See supra* at § V(B) and (C).

Here, Defendants' "standardized conduct" upon which the alleged FDCPA violations are premised clearly predominates over any questions affecting only individual members. At issue is Ability's standardized form collection letter sent on behalf of Pendrick that was mailed to consumers statewide. As such, individual issues concerning identification of prospective class members and entitlement to actual damages are capable of determination and considered "ancillary to the Court's evaluation of the predominantly common issues." *Wyatt v. Creditcare, Inc.*, 2005 WL 2780684, *5 (N.D. Cal. Oct. 25, 2005). Therefore, the "predominance" requirement is met.

## B.    <u>A Class Action is Superior to Other Methods of Adjudication</u>

In the context of an FDCPA action, courts have routinely found a class action superior to individual claims. First, individual consumers are most likely unaware of their rights under the FDCPA, therefore class action certifications to enforce

compliance with consumer protection statutes should be encouraged. Second, the size of individual claims is usually so small there is little incentive to sue individually. According to 15 U.S.C. §1692k, "(a) [e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of …(B) in the case of a class action…(ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector…" 15 U.S.C. §1692k.

The Court need not award the maximum but may award some lesser amount in its discretion after considering the factors listed in § 1692k. If there were a claims take rate of 5% for the 7,417 class members, each class member would receive approximately $104.05.[3] Significantly, given the damages cap applicable to FDCPA class cases, this class settlement falls well within the range of class action settlements in similar FDCPA matters around the country. *See, e.g., Gonzalez v. Dynamic Recovery Solutions, LLC,* Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329, at *3 (S.D. Fla. Feb. 23, 2015) (approving FDCPA

---

[3] *See, e.g., Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent."); *Bayat v. Bank of the W.*, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with "claims rate for the monetary relief portion of the settlement of roughly 1.9%"); *Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012) (ECF No. 249 at 2-3 (approving TCPA settlement with a claims rate of approximately 2%).

settlement consisting of a  nationwide injunction and $15,000 *cy pres* payment, with no payments to class members); *Little–King v. Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *3, *14 (D. N.J. Sept. 10, 2013) ($40,000 fund for class of 49,156 resulted in recovery of $7.87 per claimant); *Catala v. Resurgent Capital Servs.* L.P., 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres*, with no payment to class members); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, at *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $45,000 *cy pres* payment, with no payment to class members); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (approved settlement fund of $21,759 would net class members  approximately $7.32); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Jerman v. Carlisle*, 271 F.R.D. 572, 576–77 (N.D. Ohio 2010) (certifying class in which FDCPA damages cap would limit relief to $3.10 per class); *Berther v. TSYS Total Debt Mgmt., Inc.*, 2007 WL 1795472 (E.D. Wis. June 19, 2007); *Gaalswijk-Knetzke*, 2008 WL 3850657 (rejecting argument that the class should not be certified because class members would receive only $3.20 each); *Seeger v. Aid Assocs., Inc.*, 2007 WL 109528, at *7 (E.D. Wis. March 29, 2007) ($21 to each class member); *Salazar v. Midwest Servicing Group, Inc.* 2:17-cv-00137-PSG-KS (C.D. Cal. Oct. 2, 2018) ($20 to each class member); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461 (S.D.N.Y. 2007) ($2.50 to each class member); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*,

168 F.R.D. 451 (E.D.N.Y. 1996) ($30 to each class member); *Bogner v. Masari Investments, LLC*, 2010 U.S. Dist. LEXIS 81143 (D. Ariz. 2010) ($11.28 to each class member); *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 1701349 (N.D. Cal. Apr. 28, 2016) ($15 to each class member); *Abels v. JBC Legal Grp. P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) ($.25 cents to each class member); *Henderson v. Eaton*, 2002 WL 3145728 (E.D. La. 2002) ($21 to each class member); *Lombardi v. Columbia Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013) ($1 to each class member); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ($.28 cents to each class member).

Finally, concerns of judicial efficiency and consistency favor litigating the propriety of the Defendants' conduct by all class members in one action rather than several individual suits. Moreover, the class representative, numerous putative class members, and one of the class counsels reside in this District, and the current venue is ideal.

In light of the Congressional intent behind the FDCPA and its mandate to allow for class action litigation, a class action under the circumstances presented here would be superior to any other method of adjudication.

## VIII. THE SETTLEMENT IS FAIR, REASONABLE, ADEQUATE AND THE PRODUCT OF DILIGENT INVESTIGATION, LITIGATION AND NEGOTIATION

Under 15 U.S.C. §1692k, a plaintiff in a class action may recover a maximum award "not to exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector…" 15 U.S.C. §1692k.

The $38,500.00 Settlement Fund represents 55% of the maximum class-wide statutory damages for recovery under the FDCPA, which are capped by statute at 1% of Defendants' joint net worth under the FDCPA. *See* 15 U.S.C. § 1692k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

Given Counsels' thorough analysis of the legal and factual issues raised by this case, this litigation has reached the stage sufficient to support the Settlement. Based on their experience with these types of cases and analysis of the issues raised herein, counsel share the view that this is a fair and reasonable settlement and in the best interests of the Class. Because of the detailed legal and actual analysis conducted by counsel for both parties, their endorsement of the Settlement "is entitled to significant weight" in deciding whether to approve the Settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.1980); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). Courts should not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.

Accordingly, Plaintiff respectfully requests that this Court preliminarily

approve the Class Settlement.

## IX.    PLAINTIFF REQUESTS A PRELIMINARY APPROVAL HEARING AND AN ORDER APPROVING THE PROPOSED CLASS SETTLEMENT

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir.1995). Because the requirements of Fed. R. Civ. P. 23 have been met, the Parties stipulate that the defined class be conditionally certified for settlement purposes and jointly request that the Court schedule a Preliminary Approval Hearing. The Parties respectfully request that the Court approve and adopt the proposed Class Action Settlement Agreement and Release attached hereto as Exhibit 1.

By settling this Action, the Parties avoid the expense of class certification, trial and uncertainty of outcome. If this Action proceeded to trial the net value of the recovery would be further decreased due to the costs of compelling further discovery, preparing for trial, engaging in pre-trial motion practice and possibly, engaging in post-trial matters, including the lodging of an appeal and Pendrick, as a debt buyer, has made clear that if there had been an adverse finding regarding its liability, there would have been an appeal. The Court, after reviewing the terms negotiated by the Parties, will find that the settlement reached is fair, adequate and reasonable for all involved. Therefore, the circumstances of this matter, as discussed above, heavily weigh in favor of the proposed settlement.

## X.    THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For any class actions certified under Rule 23(b)(1), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). Likewise, for class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."  Fed R. Civ. P. 23(e)(1). When a court is presented with a classwide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice. *See* Manual for Complex Litigation § 21.633 at 321-22 (4th ed. 2004) ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement. *Id.*

The requirements for the content of class notices for (b)(1) and (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(A)-(B)(i)-(vii). In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(A)-(B)(i)-(vii), the Notice here accurately informs Settlement Class Members of the salient terms of the Agreement, the Settlement Class definition, the final approval hearing and the

rights of all parties, including the rights to file objections, enter an appearance, and to opt-out of the settlement.

## XI.    THE COURT SHOULD APPOINT FIRST CLASS, INC. AS THE THIRD-PARTY CLAIMS ADMINISTRATOR

Plaintiff requests that the Court appoint First Class, Inc. as the third-party claims administrator in this Action. First Class, Inc. is a well-qualified and experienced claims administrator that has overseen claims administration in numerous class actions settlements.  As a result, First Class, Inc. is familiar with the issues in this case and is qualified to serve as Claims Administrator.

## XII.    CONCLUSION

Plaintiff submits that this Action meets all of the prerequisites for certification as a class action. As discussed above, there are common issues of law and fact that predominate over individual issues and given the size of the class and the Defendants' net worth, a class action is a superior method of adjudication. A class action will avoid inconsistent judgments and prejudice to the Settlement Class Members. The Parties have also reached a settlement in principal, which is fair, adequate and reasonable.

WHEREFORE, Plaintiff, Maria Pascual individually and on behalf of all others similarly situated, respectfully requests the Court grant her unopposed Motion for Preliminary Approval of Class Settlement and enter the Order for Preliminary Approval of Class Settlement submitted with this Motion.

Dated January 22, 2020                    Respectfully submitted,

                                          /s/O. Randolph Bragg
                                          O. Randolph Bragg, Esq.
                                          HORWITZ & ASSOCIATES, LTD
                                          25 East Washington Street, Suite 900
                                          Chicago, IL 60602
                                          Telephone: (312) 372-8822
                                          Fax: (312) 372-1673
                                          Email: rand@horwitzlaw.com

                                          /s/Brent A. Devere
                                          Brent A. Devere, Esq.
                                          SBN#00789256
                                          LAW OFFICES OF BRENT DEVERE
                                          1411 West Ave., Suite 200
                                          Austin, TX 78701
                                          Telephone: (512) 457-8080
                                          Fax: (512) 457-8060
                                          Email: bdevere@1411west.com

                                          *Attorneys for Plaintiff,*
                                          *Maria Pascual*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2020 a copy of the foregoing was electronically filed with the Clerk of the Court, United States District Court for the Western District of Texas and served via CM/ECF upon all counsel of record.

<u>/s/O. Randolph Bragg</u>
O. Randolph Bragg