## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MARIA PASCUAL, individually and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 1:19-cv-00234-LY** |
| **ABILITY RECOVERY SERVICES, LLC, PENDRICK CAPITAL PARTNERS, LLC, and JOHN DOES 1-25,** | § § § § § | |
| **Defendants.** | § § | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Maria Pascual ("Plaintiff"), individually and as representative of the class of persons defined below (the "Settlement Class"), through counsel and pursuant to the Federal Rules of Civil Procedure, submits this unopposed Motion for Final Approval of Class Settlement and Incorporated Memorandum of Law in Support. Plaintiff respectfully shows the Court as follows:

## I.    <u>INTRODUCTION</u>

On January 17, 2020, Plaintiff and Defendants, Ability Recovery Services, LLC ("Ability") and Pendrick Capital Partners, LLC ("Pendrick") (Ability and Pendrick collectively the "Defendants"), entered into a Class Action Settlement Agreement ("Settlement Agreement") which this Court preliminarily approved on February 19, 2020. (Doc. 33.)

The Court is advised that notice of the settlement of this action was mailed on March 18, 2020 to the 7,246 Settlement Class members by the Settlement Administrator, First Class Inc. *See* Declaration of Bailey Hughes with First Class Inc. ("Hughes Decl.") at ¶ 7. Further, on April 3, 2020, Class Counsel notified First Class Inc. of an individual they personally knew to be a class member missing from the provided class list and requested that they be added and notice was mailed to that individual on April 7, 2020. *Id*. at ¶ 9. As of May 27, 2020, 2,377 notices were returned by the United States Postal Service with no forwarding address or further information. *Id.* at ¶ 10.  A total of 54 notices were forwarded by the U.S. Postal Service to a new address, or were returned by the U.S. Postal Service to First Class Inc. with a new address and were re-mailed. *Id*. at ¶ 11.

193 Settlement Class members timely postmarked and returned Claim Forms to the Administrator. Hughes Decl. at ¶ 14.  As of May 27, 2020, 19 Settlement Class members submitted late Claim Forms to the Administrator.  *Id*. at ¶ 15.  No Settlement Class members objected to the settlement. *Id.* at ¶ 12.  No Settlement Class members have made an appearance in this action.  2 Settlement Class members requested exclusion from the settlement.  *Id.* at ¶ 13.  In the middle of the claim-in period the COVID-19 pandemic

struck the United States which may have caused delays in Settlement Class members returning Claim Forms. Accordingly, the Parties agree and respectfully request the Court to allow the 19 Settlement Class members who submitted late Claim Forms to be included in the *pro rata* distribution of the Settlement Fund. Thus, pursuant to the Agreement and subject to the Court's approval, each Settlement Class member will receive $181.60, which represents their share of the monetary benefits under the Settlement Agreement.

## II.    <u>OVERVIEW OF THE CASE</u>

On March 12, 2019, this consumer class action was filed by Plaintiff alleging that Defendants sent Plaintiff and other similarly situated consumers initial collection letters in an attempt to collect upon an alleged debt which were in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Doc. 1.) On April 22, 2019, Defendants filed their respective Answers and Affirmative Defenses denying any wrongdoing. (Doc. 9 and 11.)

Soon thereafter, the Parties began engaging in discovery with the hopes of reaching a settlement. Discovery included, but was not limited to, issues related to putative class size, net worth, and damages. After discovery was exchanged, on November 8, 2019, the Parties engaged in an arms-length settlement conference. Following the settlement conference and as a result of additional telephone conferences and written exchanges, the Parties reached a settlement in principal, which culminated in the Settlement Agreement, attached hereto as **Exhibit 1**. Following the Preliminary Approval Hearing on February 12, 2020, the Court preliminarily approved the Settlement Agreement on February 19, 2020. (Doc. 33.)

In accordance with the Court's Order, notice of the settlement of this action was mailed to Settlement Class members on March 18, 2020. The time to opt out or object has passed. 2 Settlement Class members opted out. No Settlement Class members objected. Consequently, as demonstrated below, the Settlement Agreement is now ripe for this Court's final approval.

### III.    ADMINISTRATION OF THE SETTLEMENT

**A.    Preliminary Approval Order of Class Settlement.**

In its Preliminary Approval Order, the Court found that the proposed terms of the Settlement satisfied all the elements of Federal Rule of Civil Procedure 23(a), 23(b)(1) and 23(b)(3). The Order preliminarily certified a class defined as:

> All consumers in the State of Texas (i) to whom Ability Recovery Services, LLC from March 12, 2018 to April 2, 2019 mailed a collection notice on behalf of Pendrick Capital Partners, LLC that is identical to or substantially the same form as the Letter attached as **Exhibit 1** to the Agreement and which was not returned as undeliverable, (ii) in an attempt to collect a debt that was incurred more than 4 years prior to the date of the collection notice and where (iii) the collection notice did not contain any disclosure that the alleged debt was time barred and that any payment could restart the statute of limitations.

(Doc. 33, ¶ 5.)

The Order established a procedural framework for the final approval of the settlement. The Order also required the Parties to cause notice to be mailed to the Settlement Class members of the above defined Class, set deadlines and procedures for Class members to request exclusion from the Class and/or to object to the settlement, and set a date and time for the final fairness hearing.

B.     **Class Notice.**

On March 18, 2020, First Class, Inc., the Settlement Administrator selected by the Parties, caused actual notice to be sent by first class mail to the 7,246 Settlement Class Members. Hughes Decl. at ¶ 7. Further, on April 3, 2020, Class Counsel notified First Class Inc. of an individual they personally knew to be a class member missing from the provided class list and requested that they be added and notice was mailed to that individual on April 7, 2020. *Id*. at ¶ 9.

2,377 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information. *Id.* at ¶ 10. A total of 54 notices were forwarded by the U.S. Postal Service to a new address, or were returned by the U.S. Postal Service to First Class Inc. with a new address and were re-mailed. *Id*. at ¶ 11. In total, 4,870 Settlement Class members received actual notice of the settlement.

No Settlement Class members objected to the settlement. Hughes Decl. at ¶ 12. No Settlement Class members have made an appearance in this action. *See* Docket.   2 Settlement Class members requested exclusion from the settlement. *Id.* at ¶ 13.   193 Settlement Class members timely postmarked and returned Claim Forms to the Administrator. *Id.* at ¶ 14.   19 Settlement Class members submitted late Claim Forms to the Administrator. *Id.* at ¶ 15.   In the middle of the claim-in period the COVID-19 pandemic struck the United States which may have caused delays in Settlement Class members returning Claim Forms. Accordingly, the Parties agree and respectfully request the Court to allow the 19 Settlement Class members who submitted late Claim Forms to be included in the *pro rata* distribution of the Settlement Fund.

Pursuant to the Settlement Agreement and subject to the Court's approval, each of the 212 Settlement Class members who submitted a Claim Form to the Administrator will receive $181.60 which represents their share of the monetary benefits under the Settlement Agreement. Any residual funds that are uncashed or returned as undeliverable one hundred and twenty (120) days after all claims are paid, will be donated as a *cy pres* award to the *cy pres* recipient previously approved by the Court - Texas RioGrande Legal Aid - with the exception of the first $2,000.00 of residual funds which shall be used to offset the Defendants' costs of the Settlement Administrator. (Doc. 33, ¶ 13.)

**C.      Settlement Terms and Benefits to the Settlement Class.**

The Court previously considered the terms of the Settlement Agreement in entering the Preliminary Approval Order, which are as follows:

1.      Defendants will create a class settlement fund of $38,500.00 ("Settlement Fund"), which the Class Administrator, First Class, Inc. will distribute *pro rata* among those Settlement Class members who properly submit claims and do not exclude themselves from the Class Settlement ("Claimants"). Claimants will receive a *pro rata* share of the Settlement Fund by check. Checks issued to Claimants will be void one hundred and twenty (120) days from the date of issuance. If any portion of the Settlement Fund remains after the void date on the Claimants' checks, these remaining funds will be distributed as set forth below.

2.      Defendants shall pay Plaintiff $2,500.00 in recognition of her FDCPA statutory damages and as an incentive award and for her services as the Class Representative.

3.      The *pro rata* shares of any of Settlement Class members that are uncashed or returned as undeliverable one hundred and twenty (120) days after all claims are paid, will be donated as a *cy pres* award to the *cy pres* recipient previously approved by the Court - Texas RioGrande Legal Aid - with the exception of the first $2,000.00 of residual funds which shall be used to offset the Defendants' costs of the Settlement Administrator.

4.    Ability as part of the Settlement agreed to discontinue use of the letter at issue attached as Exhibit 1 to the Settlement Agreement when attempting to collect time-barred debts from persons in Texas and agreed that any letter sent to a Texas consumer attempting to collect a time-barred debt would include an appropriate disclosure as required by law.  Pendrick, as a debt buyer, does not communicate directly with consumers or send letters to consumers.

5.    Class Counsel petitioned the Court for approval of an award of fees, costs, and expenses in an amount not to exceed $35,645.00, which Defendants did not oppose. By Order of March 26, 2020 the Court granted the Motion.  (Doc. 35.)

Of the 4,870 Settlement Class members who were sent notice, which was not returned as undeliverable, none have objected to the Class Settlement and only 2 have asked to be excluded from the Class Settlement. Hughes Decl. at ¶¶ 7-13.  This fact should be viewed by the Court as a significantly strong endorsement of the Settlement by the Class.

## IV.    FINAL APPROVAL OF THE CLASS SETTLEMENT SHOULD BE GRANTED

The Court should grant final approval of the Class Settlement because the Class meets all the requirements of Federal Rule of Civil Procedure 23 and the Settlement Agreement is fair and reasonable.

## A.    The Requirements of Fed. R. Civ. P. 23(a) are Met by the Settlement Class.

### 1.    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that certification be supported by a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). The Fifth Circuit has

suggested that a class consisting of more than forty members should raise

a presumption that joinder is impracticable. *Mullen v. Treasure Chest Casino, LLC*,

186 F.3d 620, 624 (5th Cir. 1999) (citing 1 Newberg on Class Actions § 3.05 at 3-

25 (3d ed. 1992)).

Here, there are 7,247 individuals who met the Class definition, each of

whom were sent direct notice of the settlement via U.S. Mail, pursuant to the Preliminary

Approval Order. The numerosity requirement under Rule 23(a)(1) has clearly been

satisfied.

### 2.    **Commonality**

Rule 23(a)(2) requires that the class members' claims be linked through

common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This provision "'does

not require complete identity of legal claims among the class members,' [but] there

must be 'at least one issue whose resolution will affect all or a significant number

of the putative class members.'" *In re Lease Oil*, 186 F.R.D. at 420 (quoting

*Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Commonality can be

satisfied by virtue of all class members receiving the same form debt collection

letter. *See, e.g., Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal.

2005); *Swanson v. Mid Am., Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999)

(commonality shown where all class members received the same collection letter);

*Durham v. Continental Cent. Credit*, 2010 WL 2776088 (S.D. Cal. July 14, 2010).

Here, the Settlement Class members have identical legal claims based upon a standardized collection letter sent by Ability to Plaintiff and each Settlement Class member. Therefore, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.    **Typicality**

Rule 23(a)(3) requires that the "claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical if "it arises from the same practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims." *Newman v. CheckRite California, Inc.*, 1996 WL 1118092, at *5 (E.D. Cal. Aug. 2, 1996). Typicality is so closely related to commonality that "a finding of one will generally satisfy the other." *Id.* (citing Newberg, Class Actions, § 3.13).

Here, each and every Settlement member received a letter in the form of the letter received by Plaintiff.  Therefore, each member of the Settlement Class has the very same claims against the Defendants and each of those claims would be susceptible to the same defenses. Since the claims of all Settlement Class Members, including the Plaintiff, arise from the same event, practice or course of conduct, namely, the receipt of a standardized form letter, typicality is satisfied.

### 4.    <u>Fair and Adequate Class Representation</u>

"To meet Rule 23 requirements [for adequate representation], the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). Class representatives "must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Id.* (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)); *see also Steward v. Janek*, 315 F.R.D. 472, 490 (W.D. Tex. 2016). As the U.S. Supreme Court has held, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Further, class counsel must be both competent and zealous in representing the class' interests. *See, e.g., Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Plaintiff has sufficiently demonstrated her desire and ability to vigorously prosecute this action. Since the case's inception, Plaintiff has maintained regular contact with her attorneys and has remained available and accessible to them. Plaintiff recognizes that, as the named plaintiff, she must represent all consumers in the class. Her interests are aligned with those of the other Settlement Class members and there has been no indication or suggestion that her interests may conflict with the interests of unnamed Settlement Class members. *See* Declaration

of Maria Pascual ("Pascual Decl.") Doc. 28-7 at ¶ 8. For the foregoing reasons, Plaintiff has provided fair and adequate class representation in satisfaction of the fourth prong of Fed. R. Civ. P. 23(a).

Further, the Class Counsel chosen by Plaintiff meet the standards imposed by Rule 23. O. Randolph Bragg, Esq. and Brent A. Devere, Esq. collectively have extensive experience in consumer class actions and other complex litigation. *See* Declaration of O. Randolph Bragg ("Bragg Decl.") Doc. 28-8 at ¶ 14; Declaration of Brent A. Devere ("Devere Decl.") Doc. 28-9 at ¶ 9. Counsel has engaged exclusively in the area of consumer rights litigation, and have extensive experience in fair debt collections, and class actions. *Id.* Counsel have litigated numerous cases and have a history of aggressive, successful prosecution of consumer rights litigation and consumer class actions. From the outset, Counsel has vigorously pursued this Action on behalf of Plaintiff and the class members and have demonstrated their ability to do so before this Court, and, have worked diligently with Defendants' Counsel in reaching a meaningful settlement in the best interest of all the parties. Finally, Defendants do not oppose the appointment of O. Randolph Bragg, Esq. and Brent A. Devere, Esq. to represent the Settlement Class.

In light of the foregoing, Plaintiff and her Counsel satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

**B.**     **The Settlement Class Meets All the Requirements of Fed. R. Civ. P. 23(b)(1) and 23(b)(3).**

In addition to meeting the requirements of Rule 23(a), the Settlement Class also meets the requirements of Fed. R. Civ. P. 23(b)(1) and 23(b)(3). It is the Parties' position that the class should be certified under Fed. R. Civ. P. 23(b)(1) and Fed. R. Civ. P. 23(b)(3).

**1.**     **The Requirements of Fed. R. Civ. P. 23(b)(1) are Met.**

Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) if "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). As set forth below, these requirements are satisfied in this action.

In this action, if it was adjudicated that Ability, on behalf of Pendrick, sent to all putative class members, a form collection notice whose language and content violate the FDCPA as a matter of law, Ability would then be obligated to cease from sending identical notices to other consumers and to change the language of said form notices so as to comply with the FDCPA. A class may also be appropriate under Fed. R. Civ. P. 23(b)(1)(B) because judgments in individual lawsuits could

adversely affect the rights of other members of the class. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) ("Some members . . . might attempt to maintain costly individual actions in the hope . . . that their claims are more meritorious than the claims of other class members. A mandatory class action under Rule 23(b)(1)(B) is thus necessary ... to prevent claimants with such motivations from unfairly diminishing the eventual recovery of class members."); *see also In re Joint Eastern and Southern District Asbestos Litigatio*n, 982 F.2d 721, 736-37 (2d Cir. 1992), *modified*, 993 F.2d 7 (2d Cir. 1993) (limited fund class appropriate when "recoveries of early successful claimants…would…preclude later claimants . ." from recovering).

In this case, because there are at least 7,247 Settlement Class members who can file their own complaint against the Defendants, the funds available for recovery may be insufficient to cover the claims of each individual. Therefore, a class certified under Fed. R. Civ. P. 23(b)(1)(B) is appropriate. *Ortiz v. Fireboard Corp.*, 527 US 815, 834 (1999). In order to certify under Fed. R. Civ. P. 23(b)(1)(B), the Court must find that the totals of the aggregated liquidated claims and the fund available for satisfying them demonstrate the inadequacy of the fund to pay all the claims. *Id.* at 838. Here, if each of the 7,247 Settlement Class members were to receive $1,000.00 (the maximum statutory award set forth by the FDCPA) each that alone would amount to $7,247,000 which is not inclusive of attorney's fees and costs that a prevailing party would also be entitled to under the FDCPA. Defendants' joint net worth is wholly insufficient and inadequate to

satisfy the claims of all Settlement Class members, which Class Counsel ascertained by serving written discovery to Defendants regarding Defendants' net worth during the Class Period.[1]  Pendrick continues to deny that its net worth is applicable in this action and is contributing solely for purposes of settlement.

Fed. R. Civ. P. 23(b)(1)(B) is appropriate where the Defendants with inadequate assets may be forced through separate litigation to pay claimants with lower priority to the prejudice of those with higher priority claims. *Ortiz*, 527 U.S. at 839. Given that Defendants do not have the sufficient assets to fully compensate each Settlement class member, individuals who file suit early on would be awarded damages and attorney's fees in amounts that would, as a practical matter, be to the detriment of claimants who file their lawsuits at a later time. Where the class is comprised of individuals who might state a claim on a single set of facts, thereby invoking a common theory of recovery, and are to be satisfied from a limited fund as the source of payment, certification under Fed. R. Civ. P. 23(b)(1)(B) is appropriate. *Id.*

As stated above, each of the Settlement Class members can claim that Ability, on behalf of Pendrick, violated the FDCPA based on the language and form of the standardized collection notice that they received and accordingly, each class member stands to be compensated from their limited assets. Therefore, each member would be entitled to a *pro rata* amount. *See* 1 J. Pomeroy,

---

[1] Defendants' joint net worth constitutes confidential information under the operative Protective Order.  The Parties can make Defendants' balance sheets available to the Court for *in camera* review, if necessary.

Equity Jurisprudence § 407, pp. 764-765 (4th ed. 1918) ("[I]f the fund is not sufficient to discharge all claims upon it in full . . . equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment"). Further, Pendrick aggressively asserted the defense that it was not vicariously liable for the alleged wrongful conduct of Ability, acting as a debt collector for Pendrick accounts.

Based on the foregoing reasons, the Court should find that the requirements of Fed. R. Civ. P. 23(b)(1)(B) have been met and certify the class.

### 2. The Requirements of Fed. R. Civ. P. 23(b)(3) are Met.

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) if "questions of law or fact common to class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, these requirements are satisfied in this action.

### a. Common Questions Predominate

The predominance criterion is satisfied where a "common nucleus of operative fact" exists among all members of the class for which a remedy is provided at law. *Newman*, 1996 WL 1118092 at *8 (internal quotation omitted). In consumer actions brought under the FDCPA, a common nucleus of operative fact is typically found where, as here, defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents. *See supra*.

Here, Defendants' "standardized conduct" upon which the alleged FDCPA violations are premised clearly predominate over any questions affecting only individual members. At issue is Ability's standardized form collection letter, sent on behalf of Pendrick, that was mailed to consumers statewide. Therefore, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is met.

### b.    A Class Action is Superior to Other Methods of Adjudication.

In the context of an FDCPA action, courts have routinely found a class action superior to individual claims. First, individual consumers are most likely unaware of their rights under the FDCPA, therefore class action certifications to enforce compliance with consumer protection statutes should be encouraged. Second, the size of individual claims is usually so small there is little incentive to sue individually.

Here, there are 7,247 Settlement Class members and 212 submitted claims, therefore each Claimant will receive $181.60.  Given the damages cap applicable to FDCPA class cases, this class settlement falls well within the range of class action settlements in similar FDCPA matters around the country. *See, e.g., Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329, at *3 (S.D. Fla. Feb. 23, 2015) (approving FDCPA settlement consisting of a  nationwide injunction and $15,000 *cy pres* payment, with no payments to class members); *Little–King v. Hayt & Landau*, No. 11-5621,

16

2013 WL 4874349, at *3, *14 (D. N.J. Sept. 10, 2013) ($40,000 fund for class of 49,156 resulted in recovery of $7.87 per claimant); *Catala v. Resurgent Capital Servs.* L.P., 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres*, with no payment to class members); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, at *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $45,000 *cy pres* payment, with no payment to class members); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (approved settlement fund of $21,759 would net class members approximately $7.32); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Jerman v. Carlisle*, 271 F.R.D. 572, 576–77 (N.D. Ohio 2010) (certifying class in which FDCPA damages cap would limit relief to $3.10 per class); *Berther v. TSYS Total Debt Mgmt., Inc*., 2007 WL 1795472 (E.D. Wis. June 19, 2007); *Gaalswijk-Knetzke*, 2008 WL 3850657 (rejecting argument that the class should not be certified because class members would receive only $3.20 each); *Seeger v. Aid Assocs., Inc.*, 2007 WL 109528, at *7 (E.D. Wis. March 29, 2007) ($21 to each class member); *Salazar v. Midwest Servicing Group, Inc.* 2:17-cv-00137-PSG-KS (C.D. Cal. Oct. 2, 2018) ($20 to each class member); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461 (S.D.N.Y. 2007) ($2.50 to each class member); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451 (E.D.N.Y. 1996) ($30 to each class member); *Bogner v. Masari Investments, LLC*, 2010 U.S. Dist. LEXIS 81143 (D. Ariz. 2010) ($11.28 to each

class member); *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 1701349 (N.D. Cal. Apr. 28, 2016) ($15 to each class member); *Abels v. JBC Legal Grp. P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) ($.25 cents to each class member); *Henderson v. Eaton*, 2002 WL 3145728 (E.D. La. 2002) ($21 to each class member); *Lombardi v. Columbia Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013) ($1 to each class member); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ($.28 cents to each class member).

Finally, concerns of judicial efficiency and consistency favor litigating the propriety of the Defendants' conduct by all class members in one action rather than several individual suits.  Moreover, to the extent any Settlement Class members wished to pursue any individual claim, they were free to exclude themselves from the Settlement Class under Rule 23(b)(3) and only 2 chose to do so. In light of the foregoing, the superiority requirement of Fed. R. Civ. P. 23(b)(3) has been met.

## C.    Final Approval of the Class Settlement Should be Granted Because the Settlement is Fair, Reasonable and Adequate.

"If the [proposed settlement] would bind class members, the court may approve it only after a hearing and finding it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### 1.    The Class Settlement Agreement is Entitled to a Presumption of Fairness.

Public interest strongly favors the voluntary settlement of class actions. *See Kincade v. Gen. Tire & Rubber Co.,* 635 F.2d 501, 507 (5th Cir.1981) (citing *Cotton v. Hinton*, 559

F.2d 1326, 1331 (5th Cir.1977)). Because public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate, and, the Parties have been well represented by counsel.

### 2. The *Reed* Factors Weigh in Favor of Final Approval.

In determining the fairness of a settlement, the Fifth Circuit articulated 6 factors in *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983), to guide a court's review:

> (a) the existence of fraud or collusion behind the settlement;
> (b) the complexity, expense, and likely duration of the litigation;
> (c) the stage of the proceedings and the amount of discovery completed;
> (d) the probability of plaintiff's success on the merits;
> (e) the range of possible recovery; and
> (f) the opinions of the class counsel, class representatives, and
> absent class members.

*Id.* at 172. Here, the Class Settlement satisfies the 6 *Reed* factors.

### a. Lack of Fraud or Collusion.

The Class Settlement was reached as the result of several arms-length settlement negotiations after the Parties engaged in discovery related to putative class size, net worth, and damages. There is no evidence of fraud or collusion, as Defendants have consistently denied all individual and class liability.

### b. The Complexity, Expense, and Likely Duration of Litigation.

The class claims and defenses involve complex legal issues, the likelihood of success for Plaintiff if she proceeded to trial is uncertain and Defendants have raised several defenses to the Plaintiff's individual claims, which Defendants contend would ultimately have defeated the claims of the putative class. If litigation were to continue it would include completion of discovery, motions for class certification, motions for summary judgment,

several pre-trial motions, and trial.  Further, Plaintiff and the Settlement Class members might have received nothing at trial.  The Parties' Settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued litigation of the case, the probability of appeal, the certainty of delay, and the uncertainty of recovery through continued litigation, the Class Settlement is fair, reasonable, and adequate.

### c.    Stage of the Proceedings and Amount of Discovery Completed.

The Parties engaged in significant written discovery and exchanged information related to class size, net worth, damages and defenses as needed for the Parties to gauge the strengths and weaknesses of their claims and defenses and to make an informed decision about settlement. Consequently, this factor also weighs in favor of approval.

### d.    Probability of Plaintiff's Success on the Merits and the Range of Possible Recovery.

These 2 factors are related and require the court to compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172. The court determines "whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors" not by attempting the impossible task of deciding whether the parties have "reached 'exactly the remedy they would have asked the Court to enter absent the settlement,'" but instead by "'whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of plaintiffs' success on the merits.'" *Id*. (citing *Maher v. Zapata Corp*., 714 F.2d 436, 460 (5th Cir.1983)).

As discussed above, the likelihood of success for Plaintiff if she proceeded to trial is uncertain and Defendants have raised several defenses to the Plaintiff's individual claims, which Defendants contend would ultimately have defeated the claims of the putative class. Further, the $38,500.00 Settlement Fund represents 55% of the maximum class-wide statutory damages for recovery under the FDCPA, which are capped by statute at 1% of Defendants' net worth under the FDCPA. *See* 15 U.S.C. § 1692k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector").[2]   Accordingly, Defendants are paying a substantial amount given the size of the class and defenses regarding inclusion of Pendrick's net worth, which Counsel believes is fair and reasonable under the FDCPA and each Settlement Class member will receive a monetary benefit of $181.60, which far exceeds class recovery in similar FDCPA class action cases. *See supra*.

The Class Settlement is clearly "pegged at a point in the range that is fair" to the Class Settlement members and these *Reed* factors are satisfied.

---

[2] Pendrick continues to deny that its net worth is applicable. Pendrick is contributing solely for purposes of settlement.

     e.     **<u>Opinions of Class Counsel, Class Representative and Absent Class Members</u>**.

The Declarations of Class Counsels demonstrate that they possess sufficient ability and experience to effectively represent the Settlement Class. Given Counsels' thorough analysis of the legal and factual issues raised by this case, experience with these types of cases and analysis of the issues raised herein, Class Counsel share the view that this is a fair, adequate and reasonable settlement and in the best interests of the Class. *See* Bragg Decl. Doc. 28-8 at ¶ 16; Devere Decl. Doc 28-9 at ¶ 10. In addition, the Class Representative shares the view that this is a fair, adequate and reasonable settlement in the best interests of the Class. *See* Pascual Decl. Doc. 28-7 at ¶ 12. Finally, none of the Settlement Class members have objected to the Class which is further persuasive evidence of the proposed settlement's fairness and adequacy. *See In re Rite Aid Securities Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003).  Therefore, the final *Reed* factor is satisfied.

Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Class Settlement.

## VI.     CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests

the Court grant this unopposed Motion for Final Approval of Class Settlement

and Incorporated Memorandum of Law in Support, and enter the Order Granting Final

Approval of Class Action Settlement and Dismissing Claims Against

Defendants with Prejudice submitted contemporaneously with this Motion.


Dated June 9, 2020                                    Respectfully submitted,

                                                      /s/Brent A. Devere
                                                      Brent A. Devere, Esq.
                                                      SBN# 00789256
                                                      Law Offices of Brent A. Devere
                                                      1411 West Avenue, Suite 200
                                                      Austin, Texas 78701
                                                      Telephone: (512) 457-8080
                                                      Fax: (512)-457-8060
                                                      Email: bdevere@1411west.com

                                                      O. Randolph Bragg, Esq.
                                                      Horwitz & Associates, Ltd
                                                      25 East Washington Street, Suite 900
                                                      Chicago, IL 60602
                                                      Telephone: (312) 372-8822
                                                      Fax: (312) 372-1673
                                                      Email: rand@horwitzlaw.com

                                                      *Attorneys for Plaintiff*
                                                      *Maria Pascual and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2020 a copy of the foregoing was electronically filed with the Clerk of the Court, United States District Court for the Western District of Texas and served via CM/ECF upon all counsel of record.

/s/Brent A. Devere
Brent A. Devere